**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**


DISC Environmental Services, Inc.,                    Case No. 3:18CV1383

        Plaintiff

        v.                                                              **ORDER**

Usher Oil Company,

        Defendant


In this suit plaintiff DISC Environmental Services, Inc. (DISC), seeks a declaratory judgment that it is not liable to defendant Usher Oil Company (Usher) for damages caused to Usher following delivery by DISC of three shipments of waste for treatment at Usher's facility in Novi, Michigan. According to Usher, the waste material was contaminated with PCBs that, in turn, contaminated its storage tanks.

Contending that it had samples, and offering to provide its test results to Usher, DISC rejected Usher's demand. According to DISC, its test results showed that the materials had below acceptable PCB levels.

Usher contends that it has taken samples of DISC's incoming shipments to Usher. Those test results, Usher asserts, show that PCB contamination was sufficient to damage its tanks. Usher, not responding to DISC's offer to provide its testing results, had its attorney notify DISC's lawyer that Usher was going to file suit if DISC did not assume full responsibility for the decontamination costs.

The day after DISC's attorney received that emailed notice, DISC filed this dec action in the Wood County, Ohio, Court of Common Pleas. The parties being diverse (Usher is a Michigan corporation, DISC an Ohio corporation in Northwood, Ohio), Usher removed the case to this court.

Now pending is Usher's motion under 28 U.S.C. § 1404 to change venue to the Eastern District of Michigan, Southern Division. (Doc. 6). For the reasons that follow, I deny the motion.

**Discussion**

**A. Applicable Legal Principles**

Section 1404(a), which controls in this case, states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

This provision codifies the common law *forum non conveniens* doctrine. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 60 (2013). Analysis and application of the doctrine of *forum non conveniens* involves:

> a three-step analysis. After the court determines the degree of deference owed the plaintiff's forum choice, the [movant] carries the burden of establishing an adequate alternative forum and showing that the plaintiff's chosen forum is *unnecessarily burdensome* based on public and private interests.

*Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016).

"[U]nless the balance is strongly in favor of the [movant], the plaintiff's choice of forum should rarely be disturbed." *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 651 (6th Cir. 2016). As a colleague stated in *Detrick v. 84 Lumber Co.*, 2007 WL 1231636, *2 (N.D. Ohio 2007) (Lioi, J.), "[i]n general, a court considering a change of venue gives great

deference to a plaintiff's choice of forum," which will not be disturbed unless the movant "makes a strong showing that equity favors the requested transfer."

In this case there can be little doubt that plaintiff filed its suit to secure whatever advantage it could in the coming hostilities. Had the parties' dispute been long brewing, with lots of back-and-forth rumbling, plaintiff's suit would have less of the pre-emptive strike about it.

On the other hand, Usher and its lawyer did nothing to forestall plaintiff's first strike. Instead of accepting DISC's offer of its test results, which might have led a postponement of going to war in a courtroom, it rejected that offer. At that point, DISC, aware that Usher was, in effect, mobilizing, undertook an aggressively defensive maneuver.

Thus, while DISC's forum choice for its dec action might deserve less deference than in an ordinary diversity case, I conclude it is appropriate to give it a fair degree of deference. DISC fired the first salvo in this litigation, but there was more than a little warmongering on Usher's part as well.[1]

Far more determinative than any procedural issue is the substantive question of whether "the convenience of the parties and witnesses, in the interest of justice" justifies transferring this suit to the Eastern District of Michigan.

In *Hefferan, supra*, the Sixth Circuit recapitulated the factors I am to consider under the sparse language of § 1404 to determine if the movant has shown that remining in the district of filing is "unnecessarily burdensome." *Id.* at 498–501.

---

[1] Less clear, however, is whether a court should also lessen the moving defendant's burden to show "that transfer is *strongly favored* by equity.'" *Douglas v. Modern Aero, Inc.*, 954 F. Supp. 1206, 1208 n.2 (N.D. Ohio 1997) (Carr, J.) (emphasis supplied). Moderating equally the defendant's burden of persuasion goes hand in hand with giving the plaintiff's choice of forum lesser deference. To do that, and not do likewise with the burden of persuasion, would make little sense. Thus, whatever the vague term "strongly favored" may mean, I conclude that Usher need only show that transfer is favored – *i.e.*, preferred over keeping the case in this court.

The private-interest factors, the court stated:

> include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. To examine them, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Hefferan, supra,* 828 F.3d at 498 (quotation marks and citation omitted).

The court in *Hefferan* also summarized the public interest factors as including:

> administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. To evaluate them, district courts must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum. These factors will typically "thrust the court into the merits of the underlying dispute.
>
> . . . The primary local-interest considerations are the parties' connections to the local forum and the location of the injury.

*Hefferan, supra*, 28 F.3d at 500 (citations omitted).

## B. The Principles Applied

## 1. Ease of Access to Sources of Proof

Each party has its own roughly equivalent set of critical witnesses.[2]

---

[2] I agree with Usher that some of DISC's witnesses are likely to be more important than others, and that a simple head-count of possible witnesses is not determinative. (Doc. 10 at PageID 130–31). But that doesn't mean that both sides will likely conduct depositions of only some of the other's witnesses. Given the numbers of witnesses and the need for someone to travel to depose them, the burdensomeness of that phase of discovery seems equally distributed.

The fact witnesses on both sides appear to include principally, if not exclusively, its principal officers and various employees. All the fact witnesses for both parties appear to live near their receptive workplaces. Thus, each has equivalent access to the fact witnesses.

Each party's testing company is located near the party for whom they did testing. Both testing companies used equipment that is not readily mobile.

The parties may – or may not – engage third-party experts. Just as one cannot know whether that will occur, one cannot anticipate where those experts and their testing equipment, etc., if any, might be located. If some distance from the party, that is their decision, and is not a consideration for venue-transfer purposes.

Such documentary proof as the parties may need – communications, test protocols and results, and other documents or tangible evidence – appears readily at hand and amenable to production with relative ease.

Inspections of the other side's testing equipment involves no greater inconvenience for one party than the other.

It is equally inconvenient for one party to go, to the extent necessary, to the location of the other to obtain discovery, gather relevant evidence, and prepare for trial.

This factor does not favor one party or the other.

## 2. Availability and Cost of Compulsory Process
## for Attendance of Willing Witnesses

All presently anticipated witnesses are within range of this court's subpoena power. To the extent that the parties obtain experts from further away, they must, in any event, make them available at the convenience of the deposing party for purposes of discovery.

This factor does not favor one party or the other.

### 3. Possibility of View of the Premises,
### if View Would be Appropriate

The need for a jury view of either party's facilities, equipment, etc., appears highly unlikely. If, for some reason, there is a need for the court or jurors to see something, video presentation of such demonstrative evidence should suffice.

This factor does not favor either party

### 4. All Other Practical Problems Making
### Trial Easy, Expeditious, and Inexpensive

There appear to be no other practical problems that favor one party or the other. In terms of distance from the respective places of holding court, one side and its lawyers will have to travel the same shorter or longer distance than the other regardless of the final venue. Neither will be put to any substantially greater inconvenience than litigants and counsel typically experience in attending their own "local" federal courts.

This factor favors neither one side nor the other.

### 5. Public Interests

### a. Impact on Court Congestion

The court congestion factor is neutral, as judges in both this court and the Eastern District of Michigan have roughly equivalent case loads.

According to June, 2018 data from the Administrative Office of the U.S. Courts, there are 336 weighted filings per judgeship in the Eastern District of Michigan. In the Northern District of Ohio, by contrast, the average weighted filings per judgeship is slightly higher, at 362. The civil filings per judgeship are also higher in this district (352) than they are in the Eastern District of Michigan (279).

But these numbers are not so out of balance that considerations of court congestion

suggest, let alone dictate, that I transfer the case out of this district.

**b. Interest in Having Localized Controversies Decided at Home**

The locus of the allegedly culpable conduct is Novi, Michigan, the place of delivery of

the material that allegedly caused Usher's damages.

Courts generally give heed to the "public interest in having local controversies

adjudicated locally." *Stryker Sales Corp. v. Zimmer Biomet, Inc.*, 2016 WL 10683358, *2 (W.D.

Mich. 2016); *see also Schindewolf v. Seymour Const., Inc.*, 2010 WL 2290803, *7 (N.D. Ohio

2010) (McHargh, J.) (noting the "local interest in deciding the controversy locally.").

The rationale for that general consideration is, though, in this case, weak at best.

It is extremely unlikely that this dispute between two private companies is of any interest

or concern whatsoever to anyone except those relatively few individuals who are directly

involved and whom the outcome can affect.

It is certainly not a dispute in which public concern on the part of anyone else, much less

the public, is "particularly intense," or where the "interests of local citizens weigh[ ] in favor of"

of one venue or the other, as in *Winnett v. Caterpillar Inc.*, 2006 WL 1722434, *7 (M.D.Tenn.

2006). In a word, this simply "is not a case of intense local concern." *Cleveland Housing

Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 563–64 (6th Cir. 2010).[3]

---

[3] According to the motion to dismiss, an Environmental Protection Agency investigation
is underway. (Doc. 6–1 at PageID 50). Public interest in the results of that inquiry, if, indeed,
DISC delivered PCB contaminated waste from Ohio to Michigan, is likely to be greater in Ohio
than in Michigan. This is so, even taking into account Michigan's interest in not having out-of-
state contaminants imported into that State. Ohio has the ultimately greater interest in
discovering whether there is a PCB "hotspot," if one exists here, and thus was the source of the
allegedly contaminated material, than Michigan. But either way, those concerns, and the EPA
investigation that they probably prompted, have, at most, a marginal impact on my *forum non
conveniens* decision.

There is nothing about what is directly at issue in this case and the dispute that it involves that suggests that one party's "home court advantage" is any greater or lesser than the other party's. Effective voir dire is the best guardian against prejudice against a Michigan company. Unlike most federal courts, it is the long-standing practice of all the District Judges in this Division of this District to have the attorneys conduct and be the masters of voir dire. That, I am confident, can offset any home court advantage plaintiff's attorneys may have thought they might get by bring their suit in Ohio.

In this case, and under these circumstances, this factor favors neither one side nor the other.

### c. Forum's Familiarity With Applicable Law

Assuming, without deciding, that Michigan contract law will apply, this factor slightly favors Usher. But as a "border court" only a few miles from Michigan, and with considerable experience with Michigan law over my thirty-nine years of judicial service, I find the prospect of probably having to deal with any applicable Michigan law neither daunting nor troublesome. Nor should it be worrisome to the parties or their lawyers.

### d. Avoidance of Conflict of Laws Problems; Effects of Applicable Foreign Law

There appear to be no likely conflict-of-laws issues. Certainly the parties' briefs have not predicted that there will be any. That being so, this factor favors neither party.

### e. Burden of Jury Duty onCitizens of an Unrelated Forum

The only conceivable greater burden on jurors in this court as opposed to the federal courthouse in Detroit is the distance between the residences of some of our prospective jurors (upwards of 120 miles) and the time and inconvenience required to get to and from home and this court.

But counterbalanced against those factors is the traffic congestion and attendant delays prospective jurors are likely to encounter getting to and from the federal courthouse in Detroit.

Moreover, relatively few of our jurors come from our Division's outlying areas – most come from Lucas, Erie, and Allen Counties – all of which are between a half-hour and ninety-minutes' driving time from the Toledo courthouse. Many jurors summoned to the courthouse in downtown Detroit, it is likely, encounter somewhat similar driving times, though the distances to and from their homes may often be less.

Jurors should have no more problem dealing with Michigan law than I anticipate I will have. The jury instructions will be what they will be, and it is most unlikely that the jurors will find them more or less difficult to understand than any other.

### Conclusion

Usher has not met its burden, even though that burden is lower in this declaratory judgment action than in the standard diversity case, of persuading me that keeping this case here is "unnecessarily burdensome" even to a modest extent. The additional costs to Usher, including its attorneys' fees, will only nominally increase those amounts over what they would be were this case to proceed in Detroit, rather than Toledo.

The core issues are straightforward: did DISC deliver PCB contaminated material to Usher, and if so, did that material cause Usher's damages. The issues appear likely to present no unusual problems of preparation for or presentation at trial.

Assuming this will turn out to be one of those rare civil cases that ultimately goes to trial, the greater burden that some jurors from our Division might encounter is of minor significance. That burden does not justify transferring the case to avoid unnecessary inconvenience to Usher.

To be sure, I give lesser deference to DICS's forum preference than I otherwise would if there were not a declaratory judgment action. But Usher has not shown that the balance of factors barely, if at all, tilts in its favor.

Accordingly, I conclude that Usher has not met its burden of showing that degree of overall unnecessary burdensomeness that would entitle it to a change of venue.

It is, accordingly,

ORDERED THAT:

1.     Defendant's motion to change venue (Doc. 6) be, and the same hereby is, denied.

2.     The Clerk shall forthwith set an initial status/scheduling conference in lieu of a case management conference; parties to undertake to exchange Fed. R. Civ. P. 26 disclosures prior to said conference.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge

.